# Exhibit "A"

## ADJUSTABLE RATE NOTE

### (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| October 23, 2003 | Orange | CA |
|---|---|---|
| [Date] | [City] | [State] |

17 LITTLE W 12TH ST. STE, NEW YORK, NY  10014
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 468,750.00 (this amount is called "principal"), plus interest, to the order of the Lender.  The Lender is  Ameriquest Mortgage Company  .

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  8.990 %.  This interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on  December 1, 2003  .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  My monthly payments will be applied to interest before principal. If, on  November 1, 2033  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my payments at:  505 City Parkway West, Suite 100,  Orange, CA 92868

or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $  3,768.30 .  This amount may change.

#### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates

The interest rate I will pay may change on the first day of  November, 2005  , and on that day every  sixth  month thereafter.  Each date on which my interest rate could change is called a "Change Date."

#### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

#### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  six  percentage point(s) (  6.000  %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.  The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.



Initials:
V. A.b
10/23/2003 2:57:00 PM

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.990 % or less than 8.990 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.000 %**) from the rate of interest I have **been paying for the preceding six** months. My interest rate will never be greater than **14.990 %** or less than **8.990 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section without incurring a prepayment charge. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(B) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **2.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.



Initials:

10/23/2003 2:07:40 PM

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. GOVERNING LAW PROVISION

This Note and the related Security Interest are governed by Federal and State law applicable to the jurisdiction of the Property.

**Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)        _____(Seal)
Borrower   GIOVANNI DIGIULIO                    Borrower


_____(Seal)        _____(Seal)
Borrower                                        Borrower

10/23/2003 2:57:40 PM

201-3NY (Rev. 07/03)

PAY TO THE ORDER OF

WITHOUT RECOURSE
AMERIQUEST MORTGAGE COMPANY

BY: _____
KIRK LANGS, S.O.B., C.E.O.

BY: _____
JOHN P. GRAZER, E.V.P., C.F.O.

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

### RECORDING AND ENDORSEMENT COVER PAGE     PAGE 1 OF 25

| | | |
|---|---|---|
| **Document ID:** | Document Date: 10-23-2003 | Preparation Date: 08-31-2004 |
| Document Type: MORTGAGE | | |
| Document Page Count: 24 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| CHICAGO TITLE INSURANCE CO.(PICK-UP) | FIDELITY NATIONAL TITLE INSURANCE |
| 711 THIRD AVE, 5TH FLOOR | COMPANY |
| NEW YORK, NY 10017 | ATTN: MR. IRWIN WEINSTEIN |
| 212-880-1200 | 711 THIRD AVENUE, 5TH FLOOR |
| 3104-85209 NH | NEW YORK, NY 10017 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 563 | 1012 Entire Lot | 5A | 44 EAST 12 STREET |

**Property Type:** SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____ *or* Document ID_____ *or* _____ Year _____ Reel ___ Page _____ *or* File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| GIOVANNI DIGIULIO | AMERIQUEST MORTGAGE COMPANY |
| 17 LITTLE W. 12TH STREET | 1100 TOWN & COUNTRY ROAD, STE. 200 |
| NEW YORK, NY 10014 | ORANGE, CA 92868 |

### FEES AND TAXES

| Mortgage | | | | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 468,750.00 | Recording Fee: $ | | 157.00 |
| Taxable Mortgage Amount: | $ | 468,750.00 | Affidavit Fee: $ | | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | | |
| | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 2,343.50 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 4,687.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 1,171.75 | | | |
| MTA: | $ | 1,146.75 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 9,349.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed     09-16-2004 17:31

City Register File No.(CRFN):

**2004000581761**

*Rochelle Patrice*

*City Register Official Signature*

RECORD AND RETURN TO:

**Fidelity National Title**

~~Y OF NEW YORK~~

~~e, 5th Floor~~
~~Y 10017~~

Prepared By:Ameriquest Mortgage Company
Monique Ballew
10600 White Rock Road,
Suite 200-14
Rancho Cordova, CA
95670

*X Monique Ballew* [Space Above This Line For Recording Data]

# MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
**(A) "Security Instrument."** This document, which is dated October 23, 2003
together with all Riders to this document, will be called the "Security Instrument."
**(B) "Borrower."** GIOVANNI DIGIULIO

whose address is 17 LITTLE W 12TH ST. STE, NEW YORK,NY 10014
                    sometimes will be called "Borrower" and sometimes simply "I" or "me."
**(C) "Lender."** Ameriquest Mortgage Company

will be called "Lender." Lender is a corporation or association which exists under the laws of
Delaware                         . Lender's address is 1100 Town and Country
Road, Suite 200  Orange, CA 92868

**NEW YORK** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    Form 3033 1/01

**-6(NY)** (0005)

Page 1 of 17                    Initials:
    VMP MORTGAGE FORMS - (800)521-7291         10/23/2003 2:57:40 PM

*I mproved by one to two family dwelling*
*44 past 12 st          5A*

**(D) "Note."** The note signed by Borrower and dated October 23, 2003                    , will be called
the "Note." The Note shows that I owe Lender four hundred sixty-eight thousand seven
hundred fifty and 00/100

                                        Dollars (U.S. $468,750.00           ) plus interest
and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay
the debt in full by November 1, 2033                                                                                      .

**(E) "Property."** The property that is described below in the section titled "Description of the Property,"
will be called the "Property."

**(F) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of
Rights in the Property" sometimes will be called the "Sums Secured."

**(H) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable, judicial opinions will be called "Applicable Law."

**(J) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(K) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than
by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers
(where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM)
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(M) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of
damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under
the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid
Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the
Property. A taking of the Property by any governmental authority by eminent domain is known as
"Condemnation."

**(N) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the
nonpayment of, or default on, the Loan.

**(O) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the
Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(P) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same subject
matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are
imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally
related mortgage loan" under RESPA.

Initials: ___

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at 17 LITTLE W 12TH ST. STE

[Street]

NEW YORK                     [City, Town or Village] , New York 10014          [Zip Code].
This Property is in NEW YORK                                          County. It has the following legal
description: Legal Description Attached Hereto and Made a Part Hereof.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

  -6(NY) (0005)                    Page 3 of 17    10/23/2003 2:57:40 PM Form 3033 1/01


Initials:

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION
TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey
the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for
those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses
which Lender suffers because someone other than myself has some of the rights in the Property which I
promise that I have. I promise that I will defend my ownership of the Property against any claims of such
rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security
instruments all over the country. It also contains other promises and agreements that vary in different parts
of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the
Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts
for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of
my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my
payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or
cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality,
or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at
another location designated by Lender under Section 15 of this Security Instrument. Lender may return or
accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If
Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the
future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it
accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due,
then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make
payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either
apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to
the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have
now or in the future against Lender will relieve me from making payments due under the Note and this
Security Instrument or keeping all of my other promises and agreements secured by this Security
Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this
Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following
order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

   Page 4 of 17   10/23/2003 2:57:40   Form 3033 1/01



Initials:

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

### 3. Monthly Payments For Taxes And Insurance.

#### (a) Borrower's Obligations

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a loss reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Funds." I will pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Funds, and in amounts, that are then required under this Section 3.



I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security



Initials:

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c)



Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

 -6(NY) (0005)  Page 8 of 17   10/23/2003 2:57:40   Form 3033 1/01

Initials:

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance



Initials:

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in



value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to




Initials: ___

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.


Initials:

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time



Initials:

period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to



Initials: _____

the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

> (1) The promise or agreement that I failed to keep or the default that has occurred;
>
> (2) The action that I must take to correct that default;
>
> (3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;
>
> (4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;
>
> (5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and
>
> (6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.



-6(NY) (0005)                    Page 15 of 17    10/23/2003 2:57:40    Form 3033 1/01

Initials:

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____     _____ (Seal)
                                     GIOVANNI DIGIULIO            -Borrower


_____     _____ (Seal)
                                                                  -Borrower


_____ (Seal)      _____ (Seal)
                -Borrower                                         -Borrower


_____ (Seal)      _____ (Seal)
                -Borrower                                         -Borrower


_____ (Seal)      _____ (Seal)
                -Borrower                                         -Borrower

**STATE OF NEW YORK,** New York **County ss:**

On the **24 th** _____ day of **October 2003** _____ , before me, the
Day                              Month/Year

undersigned, a notary public in and for said state, personally appeared
**GIOVANNI DIGIULIO**

personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s) or the persons upon behalf of which the
individual(s) acted, executed the instrument.

Notary Public   Samaad - Saqqara Bishop

SAMAAD-SAQQARA BISHOP
Notary Public, State of New York
No. 01BI5075451
Qualified in Bronx County
Commission Expires 04 14 20 07

Tax Map Information Block:563

400-17NY (4/02)          Page 17 of 17

10/23/2003 2:57:40 PM

## Exhibit "A"

File Number █████

Description:

The land referred to herein is situated in the State of New York, County of New York, City of New York described as follows:

THE UNIT KNOWN AS UNIT NO. 5A (HEREAFTER CALLED THE "UNIT") IN THE BUILDING KNOWN AS PARC VILLAGE CONDOMINIUM AND BY THE STREET NUMBER 44-46 EAST 12TH STREET, IN THE BOROUGH OF MANHATTAN, CITY AND STATE OF NEW YORK (HEREINAFTER CALLED THE "BUILDING"), DESIGNATED AND DESCRIBED AS UNIT NO. 5A IN THE DECLARATION ESTABLISHING CONDOMINIUM OWNERSHIP OF THE BUILDING AND THE LAND ON WHICH IT IS ERECTED (HEREINAFTER COLLECTIVELY CALLED THE "PROPERTY") UNDER THE NAME THE PARC VILLAGE CONDOMINIUM, MADE BY THE GRANTOR UNDER THE CONDOMINIUM ACT OF THE STATE OF NEW YORK (ARTICLE 9-B OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK), DATED MARCH 7, 1986, RECORDED IN THE OFFICE OF THE CITY REGISTER, NEW YORK COUNTY ON THE 15TH DAY OF APRIL, 1986, IN REEL 1051, PAGE 943 AS AMENDED BY REEL 1265, PAGE 1873 (HEREINAFTER CALLED THE "DECLARATION"), AND DESIGNATED ALSO AS TAX LOT NO. 1012 IN BLOCK 563 OF SECTION 2 VOLUME 7 OF THE BOROUGH OF MANHATTAN ON THE TAX MAP OF THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK, AND ON THE FLOOR PLANS (THE "FLOOR PLANS") OF THE BUILDING CERTIFIED BY SAMUEL HAFFEY, P.E., P.C., FILED IN THE SAID REGISTER'S OFFICE AS CONDOMINIUM PLAN NO. 298.

BEGINNING AT A POINT ON THE SOUTHWESTERLY SIDE OF 12TH STREET DISTANT 132 FEET 2-1/4 INCHES WESTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE WESTERLY SIDE OF BROADWAY WITH THE SOUTHWESTERLY SIDE OF 12TH STREET;

RUNNING THENCE WESTERLY ALONG 12TH STREET, 50 FEET;

THENCE SOUTHERLY AT RIGHT ANGLES WITH 12TH STREET AND PART OF THE DISTANCE THROUGH A PARTY WALL, 103 FEET 3 INCHES TO THE CENTER LINE OF THE BLOCK;

THENCE EASTERLY ALONG SAID CENTER LINE OF THE BLOCK 65 FEET 9 INCHES TO THE LAND OF THE ESTATE OF JOHN MORSS;

THENCE EASTERLY ALONG THE LAND OF THE ESTATE OF JOHN MORSS 19 FEET 9 INCHES TO THE LAND NOW OR LATE BELONGING TO ISRAEL HUNT; AND

THENCE NORTHERLY ALONG THE LAND OF SAID ISRAEL HUNT, 103 FEET 7 INCHES TO THE POINT OR PLACE OF BEGINNING.

TOGETHER WITH A COMMON INTEREST CONSISTING OF AN UNDIVIDED 2.26% INTEREST IN THE COMMON ELEMENTS OF THE PROPERTY (THE "COMMON ELEMENTS").

SOURCE OF TITLE: BOOK 1326 PAGE 1710 (RECORDED 12/03/1987)

APN: █████████

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 23rd           day of October, 2003          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to Ameriquest Mortgage Company

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
17 LITTLE W 12TH ST. STE. NEW YORK, NY   10014

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses,
proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or
any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and
(iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments
imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to
Lender and which provides insurance coverage in the amounts (including deductible levels), for the
periods, and against loss by fire, hazards included within the term "extended coverage," and any other
hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance,

**MULTISTATE CONDOMINIUM RIDER**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-8R (0008)              Form 3140 1/01
Page 1 of 3        Initials:
VMP MORTGAGE FORMS - (800)521-7291              10/23/2003 2:57:40 PM

then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)          _____ (Seal)
GIOVANNI DIGIULIO          -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower



## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

### RECORDING AND ENDORSEMENT COVER PAGE          PAGE 1 OF 2

| **Document ID:** | Document Date: 01-15-2009 | Preparation Date: 01-21-2009 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| NATIONWIDE TITLE CLEARING | NATIONWIDE TITLE CLEARING |
| 2100 ALT 19 NORTH | 2100 ALT 19 NORTH |
| PALM HARBOR, FL  34683 | PALM HARBOR, FL  34683 |
| 727-771-4000 | 727-771-4000 |
| jessica_lesinski@nwtc.com | jessica_lesinski@nwtc.com |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 563 | 1012 | Entire Lot | 5A | 44 EAST 12TH  STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

**CRFN:** 2004000581761

### PARTIES

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| CITI RESIDENTIAL LENDING INC | DEUTSCHE BANK NATIONAL TRUST COMPANY |
| 10801 E 6TH STREET | 1761 EAST ST. ANDREW PLACE |
| RANCHO CUCAMONGA, CA  91730 | SANTA ANA, CA  92705 |

### FEES AND TAXES

| **Mortgage** | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional  MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 42.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK**

Recorded/Filed          02-17-2009 12:02
City Register File No.(CRFN):
**2009000045121**

*City Register Official Signature*

CRL L#:
Assignee L#:
Investor L#
Custodian: 85
Effective Date: 02/11/2009

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR AMERIQUEST MORTGAGE COMPANY, WHOSE ADDRESS IS 10801 E. 6TH STREET , RANCHO CUCAMONGA, CA 91730, (ASSIGNOR),** by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR, AMERIQUEST MORTGAGE SECURITIES INC. ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13, UNDER THE POOLING AND SERVICING AGREEMENT DATED DECEMBER 1, 2003, WHOSE ADDRESS IS 1761 EAST ST. ANDREW PLACE , SANTA ANA, CA 92705-4934, (ASSIGNEE)**

Mortgage dated 10/23/2003, made by **GIOVANNI DIGIULIO** to **AMERIQUEST MORTGAGE COMPANY** in the principal sum of \$468,750.00 and recorded on 09/16/2004 in Liber  page , CRFN # 2004000581761 in the office of the Registry of NEW YORK County, N.Y.

Prop Addr: 17 LITTLE W 12TH ST STE
NEW YORK, NY 10014

This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

**Dated:THIS 15TH DAY OF JANUARY IN THE YEAR 2009**
**CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR AMERIQUEST MORTGAGE COMPANY**
**POA RECORDED: 12/28/2007 DOC#:2007121400503000**

By _____
  **CRYSTAL MOORE VICE PRESIDENT**

By _____
  **VILMA CASTRO witness**

STATE OF FLORIDA COUNTY OF PINELLAS
THIS 15TH DAY OF JANUARY IN THE YEAR 2009 before me, the undersigned, personally appeared CRYSTAL MOORE, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in PINELLAS County, State of FLORIDA

_____
BRYAN J. BLY Notary Public
Residing in the county of PINELLAS
My commission expires:07/01/2011

**SEAL**

Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691055
Expires July 01, 2011
Bonded Through National Notary Assn.

**Document Prepared By: Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
Property ID(S/B/L): B: 563 L: 1012 UNIT 5A
Return by Mail to: AMERICAN HOME MTG SERVICING
  C/O NTC 2100 Alt. 19 North
  Palm Harbor, FL 34683

\$42.00

# NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

**Document ID:**              Document Date: 09-19-2019        Preparation Date: 10-02-2019

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| MCCABE, WEISBERG & CONWAY, P.C. (NEW YORK)<br>145 HUGENOT STREET<br>NEW ROCHELLE, NY 10801<br>SUPPORT@SIMPLIFILE.COM | MCCABE, WEISBERG & CONWAY, LLC<br>145 HUGENOT STREET<br>NEW ROCHELLE, NY 10801<br>SUPPORT@SIMPLIFILE.COM |

## PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 563 | 1012 | Entire Lot | 5A | 44 EAST 12TH STREET |

**Property Type:** SINGLE RESIDENTIAL CONDO UNIT

## CROSS REFERENCE DATA

**CRFN:** 2009000045121

## PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY<br>8950 CYPRESS WATERS BLVD<br>COPPELL, TX 75019 | U.S. BANK NATIONAL ASSOCIATION<br>425 WALNUT STREET<br>CINCINNATI, OH 45202 |

☒ Additional Parties Listed on Continuation Page

## FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed | 10-02-2019 17:06 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | | **2019000320077** | |
| Recording Fee: | $ | 42.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

| | |
|---|---|
| **RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION)** | **PAGE 2 OF 3** |

**Document  ID: 2019100200883001**          Document Date: 09-19-2019          Preparation Date: 10-02-2019
Document  Type: ASSIGNMENT, MORTGAGE

**PARTIES**

**ASSIGNOR/OLD LENDER:**
AS TRUSTEE FOR AMERIQUEST MORTGAGE
SECURITIES INC.
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

**PARTIES**

**ASSIGNEE/NEW LENDER:**
NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS
TRUST
425 WALNUT STREET
CINCINNATI, OH 45202

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

## CORPORATE ASSIGNMENT OF MORTGAGE

**New York, New York**
**SELLER'S SERVICING** [redacted] DIGIULIO"

Date of Assignment: September 19th, 2019
Assignor: DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE
SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13, UNDER THE POOLING
AND SERVICING AGREEMENT DATED DECEMBER 1, 2003, BY NATIONSTAR MORTGAGE LLC, IT'S
ATTORNEY-IN-FACT at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE
FOR THE NRZ PASS-THROUGH TRUST VII(B) at 425 WALNUT STREET, CINCINNATI, OH 45202
Executed By: GIOVANNI DIGIULIO To: AMERIQUEST MORTGAGE COMPANY
Date of Mortgage: 10/23/2003 Recorded: 09/16/2004 as Instrument No.: 2004000581761 In the County of New
York, State of New York.

-Assigned Wholly by CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR AMERIQUEST
MORTGAGE COMPANY TO DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST
MORTGAGE SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13, UNDER
THE POOLING AND SERVICING AGREEMENT DATED DECEMBER 1, 2003 Dated: 01/15/2009 Recorded:
02/17/2009 as Instrument No.: 2009000045121

Section/Block/Lot NA/563/1012

Property Address: 44 EAST 12TH ST APT5A, NEW YORK, NY 10003-4632
  This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

  KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $468,750.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

  TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage. IN WITNESS WHEREOF, the assignor has executed these presents the day and
year first above written:

  DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE SECURITIES
INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13, UNDER THE POOLING AND
SERVICING AGREEMENT DATED DECEMBER 1, 2003, BY NATIONSTAR MORTGAGE LLC, IT'S
ATTORNEY-IN-FACT
On September 19th, 2019

By: _____
TSEDALE ALEMU, Vice-President

STATE OF Texas
COUNTY OF Dallas

On the 19th day of September in the year 2019 before me, the undersigned, personally appeared TSEDALE
ALEMU, Vice-President, personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such
individual(s) made such appearance before the undersigned in the County of Dallas, State of Texas.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Expires: 03/07/2023 #131921660
Dallas, Texas

```
SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-07-2023
Notary ID 131921660
```

(This area for notarial seal)

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | ■■■■■■■■■■■■■■■ |

## RECORDING AND ENDORSEMENT COVER PAGE                                    PAGE 1 OF 2

| **Document ID** ■■■■■ | Document Date: 11-13-2019 | Preparation Date: 12-04-2019 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| MISSION CAPITAL ADVISORS LLC<br>5701 E. HILLSBOROUGH AVENUE<br>SUITE 2327<br>TAMPA, FL 33610<br>SUPPORT@SIMPLIFILE.COM | S. HUNT MISSION GLOBAL, LLC<br>5701 E HILLSBOROUGH AVENUE STE 2327<br>TAMPA, FL 33610<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 563 | 1012 | Entire Lot | 5A | 44 EAST 12TH STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

Document ID:     2004083100956001

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE F<br>1661 WORTHINGTON ROAD, SUITE 100<br>WEST PALM BEACH, FL 33409 | U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVID<br>60 LIVINGSTON AVENUE, EP-MN-WS3D<br>ST. PAUL, MN 55107 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed          12-04-2019 17:22 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | **2019000396717** | | |
| Recording Fee: | $ | 42.00 | | | |
| Affidavit Fee: | $ | 0.00 | *City Register Official Signature* | | |

Recording Requested By:
Mission Global, LLC - Ocwen

When Recorded Return To:

S. Hunt
Mission Global, LLC
5701 E. Hillsborough Avenue
Ste 2327
Tampa, FL  33610

## CORPORATE ASSIGNMENT OF MORTGAGE

**New York, New York**
**Mission Global LLC - Ocwen#:**          "DIGIULIO" TC 38

Date of Assignment: November 13th, 2019
Assignor: DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE
SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13 BY ITS ATTORNEY IN
FACT PHH MORTGAGE CORPORATION at 1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL
33409
Assignee: U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE
FOR NRZ PASS-THROUGH TRUST VII (NPL) at 60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN  55107
Executed By: GIOVANNI DIGIULIO  To: AMERIQUEST MORTGAGE COMPANY
Dated: 10-23-2003 Recorded: 09-16-2004 as Instrument No. 2004000581761, Book/Reel/Liber N/A Page/Folio N/A
In the County of New York, State of New York.

-Assigned Wholly by CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR AMERIQUEST MORTGAGE
COMPANY to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF
THE CERTIFICATEHOLDERS FOR ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13 Dated:
01-15-2009 Recorded: 02-17-2009 as Instrument No. 2009000045121, Book/Reel/Liber N/A Page/Folio N/A

Block: 563 Lot: 1012
Property Address: 44 E 12TH ST APT5A, NEW YORK, NY  10003

    This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage
having an original principal sum of $468,750.00 with interest, secured thereby, and the full benefit of all the powers
and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the
said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.  IN WITNESS WHEREOF, the Assignor has executed these presents the day and
year first above written:

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE SECURITIES
INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13 BY ITS ATTORNEY IN FACT PHH
MORTGAGE CORPORATION
On November 13th, 2019

By: _____
Eric Davis, Vice President

STATE OF Florida
COUNTY OF Hillsborough

On the 13th day of November in the year 2019 before me, the undersigned, personally appeared Eric Davis, Vice
President of DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE
SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13 BY ITS ATTORNEY IN
FACT PHH MORTGAGE CORPORATION, personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and
that such individuals(s) made such appearance before the undersigned in the County of Hillsborough, State of
Florida.

WITNESS my hand and official seal,

_____
April Kennedy
Notary Expires: 4/27/2023  #GG 295384
Hillsborough, Florida

APRIL KENNEDY
MY COMMISSION # GG 295384
EXPIRES: April 27, 2023
Bonded Thru Notary Public Underwriters

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | |

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 5 |
|---|---|

**Document ID:**     **Document Date:** 09-09-2020     **Preparation Date:** 11-25-2020

**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 3

| PRESENTER: | RETURN TO: |
|---|---|
| MERIDIAN ASSET SERVICES 3201 34TH STREET SOUTH SUITE 310 SAINT PETERSBURG, FL 33711 SUPPORT@SIMPLIFILE.COM | MERIDIAN ASSET SERVICES LLC 3201 34TH STREET SOUTH, SUITE B310 ST. PETERSBURG, FL 33711 SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 563 | 1012 | Entire Lot 5A | | 44 EAST 12 STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2004000581761

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION 60 LIVINGSTON AVENUE, EP-MN-WS3D ST. PAUL, MN 55107 | US BANK TRUST NATIONAL ASSOCIATION 7114 E. STETSON DR., SUITE 250 SCOTTSDALE, AZ 85251 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed | 11-30-2020 11:18 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | | **2020000336063** | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | *Annette M Hill* | | |

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

**RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION)**          **PAGE 2 OF 5**

**Document  ID:** [REDACTED]                    Document Date: 09-09-2020                 Preparation Date: 11-25-2020
Document  Type: ASSIGNMENT, MORTGAGE

---

 **PARTIES**

**ASSIGNOR/OLD LENDER:**
NRZ PASS-THROUGH TRUST VII-B
60 LIVINGSTON AVENUE, EP-MN-WS3D
ST. PAUL, MN 55107

---

 **PARTIES**

**ASSIGNEE/NEW LENDER:**
IGLOO SERIES IV TRUST
7114 E. STETSON DR., SUITE 250
SCOTTSDALE, AZ 85251

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use _____

Section: N/A Lot: 1012 Block: 563
Loan No:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST VII-B**, whose address is **60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE FOR THE IGLOO SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **10/23/2003**
Original Loan Amount: **$468,750.00**
Executed by (Borrower(s)): **GIOVANNI DIGIULIO**
Original Lender: **AMERIQUEST MORTGAGE COMPANY**
Filed of Record: In Book/Liber/Volume N/A, Page N/A
Document/Instrument No: **2004000581761** in the Recording District of **Manhattan New York City, NY**, Recorded on **9/16/2004**.

Chain Exhibit: SEE EXHIBIT "A" ATTACHED  ₘₕ    APT.5A    10003
Property more commonly described as: ~~17 LITTLE W 12TH ST. STE~~, NEW YORK, NEW YORK ~~10014~~
                                                    44   EAST              ᵐᴴ                          ᵐᴴ

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: September 9, 2020

U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR
THE NRZ PASS-THROUGH TRUST VII-B, BY NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, ITS
ATTORNEY-IN-FACT

By: Deborah A Karr
Title: Vice President

Witness Name: Candace Zane

POA Batch#11542
POA was recorded in New York NY on
8/13/2020 Inst#2020000228917

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        Colorado
County of       Douglas

On September 9, 2020, before me, David Gutierrez, a Notary Public, personally appeared Deborah A Karr, Vice
President of/for NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, AS ATTORNEY-IN-FACT FOR
U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS
TRUSTEE FOR THE NRZ PASS-THROUGH TRUST VII-B, personally known to me, or who proved to me on
the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/
their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument. I certify under PENALTY OF PERJURY under the laws of the State of Colorado that the foregoing
paragraph is true and correct. I further certify Deborah A Karr, signed, sealed, attested and delivered this document
as a voluntary act in my presence in the County of Douglas, State of Colorado.

Witness my hand and official seal.

(Notary Name): David Gutierrez
My commission expires: April 20, 2022

DAVID GUTIERREZ
Notary Public
State of Colorado
Notary ID # 20184017437
My Commission Expires 04-20-2022

EXHIBIT "A"

**Assignment Chain**

| | |
|---|---|
| Lender: | AMERIQUEST MORTGAGE COMPANY |
| Borrower: | GIOVANNI DIGIULIO |
| Origination Balance: | $468,750.00 |
| Origination Date: | 10/23/2003 |
| Mortgage Recording Details: | Recorded: 09/16/2004; Book: N/A; Page: N/A; Instrument: 2004000581761 |

| | |
|---|---|
| Assigned From: | CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR AMERIQUEST MORTGAGE COMPANY |
| To: | DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR, AMERIQUEST MORTGAGE SECURITIES INC. ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13, UNDER THE POOLING AND SERVICING AGREEMENT DATED DECEMBER 1, 2003 |
| AOM Recording Details: | Recorded 02/17/2009; Book: N/A; Page: N/A; Instrument: 2009000045121 |

| | |
|---|---|
| Assigned From: | DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13, UNDER THE POOLING AND SERVICING AGREEMENT DATED DECEMBER 1, 2003 |
| To: | U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST VII(B) |
| AOM Recording Details: | Recorded 10/02/2019; Book: N/A; Page: N/A; Instrument: 2019000320077 |

| | |
|---|---|
| Assigned From: | DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR, AMERIQUEST MORTGAGE SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13 BY ITS ATTORNEY IN FACT PHH MORTGAGE CORPORATION |
| To: | U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR NRZ PASS-THROUGH TRUST VII (NPL) |
| AOM Recording Details: | Recorded 12/04/2019; Book: N/A; Page: N/A; Instrument: 2019000396717 DUPLICATE |



| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER** | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | |

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 6 |
|---|---|---|

**Document ID:**                      **Document Date:** 11-13-2020      **Preparation Date:** 11-25-2020
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 4

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| MERIDIAN ASSET SERVICES<br>3201 34TH STREET SOUTH<br>SUITE 310<br>SAINT PETERSBURG, FL 33711<br>SUPPORT@SIMPLIFILE.COM | MERIDIAN ASSET SERVICES LLC<br>3201 34TH STREET SOUTH, SUITE B310<br>ST. PETERSBURG, FL 33711<br>SUPPORT@SIMPLIFILE.COM |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 563 | 1012 | Entire Lot | 5A | 44 EAST 12 STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

**CRFN:** 2004000581761

**PARTIES**

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| US BANK TRUST NATIONAL ASSOCIATION<br>7114 E. STETSON DR., SUITE 250<br>SCOTTSDALE, AZ 85251 | US BANK TRUST NATIONAL ASSOCIATION<br>7114 E. STETSON DR., SUITE 250<br>SCOTTSDALE, AZ 85251 |

☒ Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed | 11-30-2020 11:18 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | | **2020000336064** | |
| Recording Fee: | $ | 57.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M Hill*

***City Register Official Signature***

| NYC DEPARTMENT OF FINANCE |
| OFFICE OF THE CITY REGISTER |

**RECORDING AND ENDORSEMENT COVER PAGE   (CONTINUATION)          PAGE 2 OF 6**

**Document  ID:** ▮▮▮▮▮▮▮▮▮              Document Date: 11-13-2020              Preparation Date: 11-25-2020
Document  Type: ASSIGNMENT, MORTGAGE

---

**PARTIES**

**ASSIGNOR/OLD LENDER:**
IGLOO SERIES IV TRUST
7114 E. STETSON DR., SUITE 250
SCOTTSDALE, AZ 85251

---

**PARTIES**

**ASSIGNEE/NEW LENDER:**
DWELLING SERIES IV TRUST
7114 E. STETSON DR., SUITE 250
SCOTTSDALE, AZ 85251

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

Section: N/A Lot: 1012 Block: 563
Loan No:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the
undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE IGLOO SERIES IV
TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251,**
(ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION AS
TRUSTEE OF DWELLING SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250,
SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial
interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and
any rights due or to become due thereon.

Date of Mortgage: **10/23/2003**
Original Loan Amount: **$468,750.00**
Executed by (Borrower(s)): **GIOVANNI DIGIULIO**
Original Lender: **AMERIQUEST MORTGAGE COMPANY**
Filed of Record:  In Book/Liber/Volume N/A, Page N/A
Document/Instrument No: **2004000581761** in the Recording District of **Manhattan New York City, NY**, Recorded
on **9/16/2004**.

Chain Exhibit:  SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **44 EAST 12TH ST., APT 5A, NEW YORK, NEW YORK 10014**

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **11/13/2020**

US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE IGLOO SERIES IV TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT

By: **TIFFANY ALMEYDA**                                                        Witness Name: **JARED CROSS**
Title: **VICE PRESIDENT**

   **POA Batch#11963**
   **POA was recorded in New York NY on**
   **8/3/2020 Inst#2020000217841**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of          **FLORIDA**
County of        **PINELLAS**

On **11/13/2020**, before me, **WANDA M. HIATT**, a Notary Public, personally appeared **TIFFANY ALMEYDA, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE IGLOO SERIES IV TRUST,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that **TIFFANY ALMEYDA**, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of **PINELLAS**, State of **FLORIDA**.

Witness my hand and official seal,

(Notary Name): **WANDA M. HIATT**
My commission expires: **11/08/2024**

WANDA M. HIATT
MY COMMISSION # HH54376
EXPIRES: November 08, 2024

## EXHIBIT "A"
### Assignment Chain

| | |
|---|---|
| Lender: | AMERIQUEST MORTGAGE COMPANY |
| Borrower: | GIOVANNI DIGIULIO |
| Origination Balance: | $468,750.00 |
| Origination Date: | 10/23/2003 |
| Mortgage Recording Details: | Recorded: 09/16/2004; Book: N/A; Page: N/A; Instrument: 2004000581761 |
| | |
| Assigned From: | AMERIQUEST MORTGAGE COMPANY |
| To: | DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR, AMERIQUEST MORTGAGE SECURITIES INC. ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13, UNDER THE POOLING AND SERVICING AGREEMENT DATED DECEMBER 1, 2003 |
| AOM Recording Details: | Recorded 02/17/2009; Book: N/A; Page: N/A; Instrument: 2009000045121 |
| | |
| Assigned From: | DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13, UNDER THE POOLING AND SERVICING AGREEMENT DATED DECEMBER 1, 2003 |
| To: | U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST VII(B) |
| AOM Recording Details: | Recorded 10/02/2019; Book: N/A; Page: N/A; Instrument: 2019000320077 |
| | |
| Assigned From: | DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR, AMERIQUEST MORTGAGE SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13 |
| To: | U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR NRZ PASS-THROUGH TRUST VII (NPL) |
| AOM Recording Details: | Recorded 12/04/2019; Book: N/A; Page: N/A; Instrument: 2019000396717 AOM TO BE RESCINDED |
| | |
| Assigned From: | DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR, AMERIQUEST MORTGAGE SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-13 |
| To: | U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR NRZ PASS-THROUGH TRUST VII (NPL) |
| AOM Recording Details: | To be recorded concurrently herewith AOM RESCINDS AOM RECORDED 12/04/2019; Book: N/A; Page: N/A; Instrument: 2019000396717 |

| | |
|---|---|
| Assigned From: | U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST VII-B |
| To: | US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE FOR THE IGLOO SERIES IV TRUST |
| AOM Recording Details: | To be recorded concurrently herewith |

When recorded, mail to:

Ameriquest Mortgage Company
1100 Town and Country Road, Suite 200
Orange, CA 92868

Loan Number: ▮▮▮▮▮▮▮

*Space Above This Line For Recorder's Use*

## MODIFICATION AGREEMENT

This agreement made on October 23, 2003, by and between Ameriquest Mortgage Company herein designated as the BENEFICIARY and  GIOVANNI DIGIULIO

WHEREAS, BENEFICIARY is the holder of a certain promissory Note executed by Borrower(s) in the total amount of $ 468,750.00, dated October 23, 2003, which Note is secured by Deed of Trust dated October 23, 2003 recorded in the Office of the County Recorder of NEW YORK County, as Instrument Number   on  of official records of said County.

NOW THEREFORE, for value received, the parties hereto modify the above referenced [X] Note and/or [X] Deed of Trust and/or [X] All Documents   as follows:

**THIS MODIFICATION AGREEMENT IS BEING EXECUTED TO CORRECT THE ADDRESS ON ALL DOCUMENTS FROM 17 LITTLE W 12TH ST, STE TO READ 44 E 12TH STREET #5A**

Nothing herein contained in any manner whatsoever, alter, amend, modify or changed any other terms or conditions of the above referenced [X] Note and/or [X] Deed of Trust and/or [X] All   Documents except as to the Modification described above, nor shall any of the rights of the BENEFICIARY thereunder be specifically prejudiced by reason of this modification; all rights of the beneficiary shall be and shall remain in full force as though the Modification has been originally specified in the original Note and/or Deed of Trust.

BORROWERS:                                    Ameriquest Mortgage Company

_____

GIOVANNI DIGIULIO

_____              By: _____

_____                   BRANCH MANAGER SIGNATURE

_____              By: _____

                                          PRINT BRANCH MANAGER NAME

State of New York
County of New York

On October 27, 2003, before me Pablo E. Polastri,

Giovanni Digiulio _____, personally appeared
_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed this Modification Agreement.

PABLO E. POLASTRI
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN QUEENS CO., NO. 41-4639827
CERTIFICATE FILED NEW YORK CO.
COMMISSION EXPIRES OCT. 31, 2006

MODA02 (Rev.5/99)